Mr. Justice Cox
delivered tbe opinion of tbe court.
Benedict Jost, a citizen of Switzerland, emigrated to tbe United States, was naturalized and afterwards acquired real estate, by purchase, in the District of Columbia. He died September 11, 1869, after making a will,by which be devised bis real estate, to which this suit relates, for tbe use of his wife, durante viduitate, with remainder to his heirs-at-law, to be divided equally between them. He left no .issue, but left a widow who afterwards married again and died, and a naturalized brother residing in tbe District of Columbia, and several brothers and sisters and the descendants of others, Who reside in and are citizens of Switzerland.
These relatives in Switzerland claim to be heirs-at-law and file this bill for a sale of the real estate and a distribution of its proceeds. The validity of this claim has been discussed and submitted for decision as a preliminary question in the cause.
The will purports to pass to the heirs-at-law just the same title which the law would cast upon them, and in such case their title is referred to the act of the law, and the will is regarded simply as a nullity. This is the case even where a particular estate is first given out of the inheritance. The will, therefore, for the purposes of the present inquiry, may be put out of the case, and the simple inquiry will be, on what persons does the law cast the title to this property?
This question must be determined on general principles by the lex loci rei sitce — the law of the place where the property is situated.
By the common law, in force in the District of Columbia, the title to this property would descend to all the brothers *492 and sisters of the decedent, or their descendants, who have 'heritable blood. But by the same common law an alien is under a disability to inherit realty from a citizen. And no .change is made in this respect by the Maryland act of December, 1791, as interpreted by the Supreme Court of the United States in Spratt v. Spratt, 1 Pet., 323, and 4 Pet., 392.
The question to be considered is, whether the treaty between the United States and Switzerland of 1850, which, if valid, is as much a part of the law of the land as the common law or statutes, makes any change in this respect.
The main provisions that are pertinent are contained in the 1st and 3d clauses of Article 5, which are as follows, viz.: “ The citizens of each one of the contracting parties shall have power to dispose of their personal property within the jurisdiction of the other, by sale, testament, donation or in any other manner ; and their heirs, whether by testament or ab intestate, or their, successors, being citizens of the other party, shall succeed to the said property or inherit it, and they may take possession thereof, either by themselves or by others acting for them ; they may dispose of the same as they may think proper, paying no other charges than those to which the inhabitants of the country wherein the said property is situated shall be liable to pay in a similar case.
“ The foregoing provisions shall be applicable to real estate situated within the States of the American Union, or within the Cantons of the Swiss confederation, in which foreigners are entitled to hold or inherit real estate.”
There is an apparent ambiguity in the first clause which, however, disappears upon a careful examination. The first sentence clearly applies only to property which a citizen of one country may leave within the jurisdiction of the other, and, as applied to this case, would only affect property which Jost, a citizen of the United States, might leave in Switzerland, and not that which he would leave here. The ambiguity in question grows out of the use of the words “ said property” in the following sentences, which contain the provisions affecting this case. If the terms “ said property” mean, and are confined to, property which, a citizen of one *493 country may own within the jurisdiction of the other, this clause of the treaty' fails to provide for the facts of the present case.' If they simply mean the personal property, generally, of a citizen of either party, then the two clauses together — the latter extending the provisions of the former to real estate — furnish the law for this case.
The context shows that the first mentioned interpretation of the words “ said property ” cannot be the correct one. The sentences following the first clearly provide for the case where the decedent is a citizen of one country and his heirs of another, and where the property is situated in a different country from that of the heirs, i. e., in that of which the deceased was a citizen'; because it provides that the heirs in question may inherit or succeed, which wás unnecessary if the property wras in their ow7n country, and that they shall be liable to no other charges than those to which the inhabitants of the country wherein the property is situated shall be liable in a similar case. It meets this very case. It would not be necessary for the United States to stipulate that Jost’s foreign heirs might inherit his property in Switzerland ; their own laws would provide for that. But it was necessary for the United States to stipulate that those heirs should inherit the property in the United States, and might dispose of it on the same terms as .inhabitants of the country where it is situated.
The clear intent of this clause of the treaty, therefore, we think, is that a citizen of one country may dispose of his property in the other, and that on his death his heirs who may be citizens of the other shall inherit his personal property wherever it may be, and the terms “said property ” mean “ said personal property,” without the limitation of being within the jurisdiction of the other party.
The third clause extends these provisions to real estate in States of the Union in which aliens may be entitled to hold or inherit real estate.
. By the act of Maryland of 1791, before mentioned, entitled “An act concerning the Territory of Columbia and the city of - 'Washington,” it is provided, that any foreigner may, *494 by deed or will, hereafter to be made, take and hold lands within that part of said territory which lies within this State, in the same manner as if he was a citizen of this State, and the same lands may be conveyed by him and transmitted to and be inherited by his heirs or relations as if he and they were citizens of this State.'’
It may be suggested that the words “ hold or inherit ” in the treaty should be read as if they were “ hold and inherit,” and that it applies only to those localities where the foreigners may both inherit and hold, or, in other wordy, may hold by inheritance, which is not provided for in the Maryland act.
It will be presently seen, however, that the treaty clearly means to give a right to inherit where it does not exist already, and also where there may be no right -to hold after inheriting. It therefore cannot intend to confine its benefits to places where there is already a right to hold by inheritance.
A question may suggest itself, what is meant by the term “ heirs ” in the treaty. Undoubtedly, examined by the light of the common law, its language would seem somewhat incongruous. That is to say, since by the common law there can be no alien heirs, it would not be strictly correct to speak of heirs who are “ citizens of the other party,” and to provide that AaVsshall inherit would sound superfluous. But it is to be remembered that the treaty employs the language not of the common, but of international law, and there is no difficulty in1 understanding that it refers to those on whom the local law would cast the succession, in virtue of their relationship to the deceased, if there were no disability such . as that of alienage. The policy of the Government is seen, and we are assisted, in arriving at its meaning in this treaty, by a comparison of this with others ; thus in the treaty with France of 1800, it is provided, that “the citizens and inhabitants of either of the two countries who shall he heirs of goods, movable or immovable in the other shall be able to succeed ab intestato (which is only another expression for “shall-inherit ”) without being obliged to obtain letters of naturali *495 zation ; * * * and also, that in case the laws of either of the two states should restrain strangers from the exercise of the rights of property with respect to real estate, such real estate may be sold or otherwise disposed of,” &c., &c.
And in the treaty of 1848 with Austria, and some fourteen others with different powers, extending over the period between 1795 and 1867, it it is provided that “ when, on the death of any person holding real property, or property not personal, within the territories of one party, such real property ivould, by the laws of the land, descend on a citizen or subject of the other, were he not disqualified by the laws of the country where the property is situated, such citizen or subject shall be allowed a term of two years to sell the same.” Throughout the series of treaties those who would inherit but for the disqualification of alienage are intended to be provided for, and there can be no doubt that the same persons are designated in the treaty under consideration, under the terms “heirs being citizens of the other party.”
It may seem doubtful whether the Federal Government has authority, in virtue of the treaty making power, and, therefore, whether it could have intended to interfere with the laws of descent in relation to real property in the several States.
The treaties referred to recognize or create a distinction between holding real estate, whether by descent or otherwise, and simply inheriting it. They do not purport to interfere with State laws as to the holding of realty by aliens, but they do unquestionably purport to give a right to inherit where it does not exist already, to this extent and subject to this qualification, viz., that where the State laws do not permit aliens to hold, they still may sell the property which, if they were citizens, they might inherit and hold and realize the proceeds for their own use.
This is expressly provided in the fourth clause of section 5 of the treaty with Switzerland, as well as in the others that have been referred to. And with reference to the power of the Federal Government on this subject, it is sufficient to say, that whatever may be thought of it as affect *496 ing property in tbe States, there can be no question about it in the District of Columbia.
'."We are, therefore, satisfied on the whole that the complainants are, by virtue of the Maryland act of descent, in force in the District of. Columbia, and the treaty with Switzerland, heirs-at-law of Benedict Jost equally with his brother, resident here.
We have discussed the case as one of intestacy because we see nothing in the general language of the will, or the circumstances of the parties, that confines the terms employed to the foreign heirs on the one hand, or the domestic heir on the other, or gives to those terms any other effect than belongs to a general devise to an heir-at-law.